UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORRINE MELTON,

    Petitioner,

v.

                            CASE NO. 2:08-CV-11018
                            HONORABLE PATRICK J. DUGGAN

CLARICE STOVALL,

    Respondent.
                               /

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY

**I.    Introduction**

Michigan prisoner Corrine Melton ("Petitioner"), by and through her attorney F. Randall Karfonta, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that she is being held in violation of her constitutional rights. Following a jury trial in the Tuscola County Circuit Court in 2004, Petitioner was convicted of first-degree home invasion in violation of Michigan Compiled Laws § 750.110a(2), six counts of larceny of a firearm in violation of Michigan Compiled Laws § 750.357b, larceny in a building in violation of Michigan Compiled Laws § 750.360, and possession of a firearm during the commission of a felony in violation of Michigan Compiled Laws §750.227b. The trial court sentenced Petitioner as a fourth habitual offender to 10 to 25 years imprisonment on the first-degree home invasion conviction, a concurrent term of 10 to 25

1

years imprisonment on each of the six larceny of a firearm convictions, a concurrent term of 10 to 15 years imprisonment on the larceny in a building conviction, and a consecutive term of two years imprisonment on the possession of a firearm during the commission of a felony conviction.

In her pleadings, Petitioner challenges the sufficiency of the evidence to support her convictions. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court, however, grants Petitioner a certificate of appealability.

## II.    Facts and Procedural History

Petitioner's convictions arise from a theft at the home of Mary Ann Elbers and her son, Jeffrey Elbers, on June 3, 2003. On the morning of June 3, 2003, the Elbers went to work and as usual did not lock the back door connecting the house to the garage. (5/12/04 Tr. at 84, 89, 97.) While the Elbers were at work, Petitioner left a message on their home answering machine at 1:45 p.m. (5/12/04 Tr. at 106, 111.) Petitioner indicates in her pleadings that she left a message stating she was going to drop off a marine battery at the Elbers' garage.[1]

After arriving home from work at 5:15 p.m., Mr. Elbers listened to Petitioner's message and then examined a gun case in the house and realized six of the guns were missing from the case. (5/12/04 Tr. at 85, 112.) Five of the guns were Mrs. Elbers and one was Mr. Elbers. The Elbers then noticed that a safe in one of the bedrooms was open, and items were missing from the safe including stamps, a camcorder, and money.

---

[1]Trial transcripts do not indicate what Petitioner said in her message.

(5/12/04 Tr. at 90, 113.) Some of Mrs. Elbers's jewelry also was missing. (5/12/04 Tr. at 94.) The Elbers realized that the curtains in the bedroom were open, and the blinds in the bathroom had been pulled apart. When the Elbers left that morning, the curtains and blinds were closed. (5/12/04 Tr. at 92-93.)

After listening to the message and discovering the missing items, Mr. Elbers called Petitioner. (5/12/04 Tr. at 118.) Petitioner explained that she had brought the battery to his house and left a note. (5/12/04 Tr. at 118.) Mr. Elbers did not recover the battery or the note. (5/12/04 Tr. at 118.)

Mr. Elbers knew Petitioner because she was dating one of his friends. She had been to the Elbers' house before the incident and while there she had used the bathroom. (5/12/04 Tr. at 107.) Mr. Elbers stated that Petitioner was gone for a while and he eventually asked her boyfriend to go get her. The gun cabinet was next to the bathroom, and the safe was visible from the door of the bedroom at the end of the hallway from the bathroom. (5/12/04 Tr. at 111-12.)

On June 7, 2003, Detective Larry Walker interviewed Petitioner in connection with the theft at the Elbers' residence. At Petitioner's trial, Detective Walker testified as to statements Petitioner made to him during that interview. This included Petitioner's admission that she drove her maroon truck with white stripes to the Elbers' house on June 3, 2003, and her claim that she was there only to drop off the battery and note for Mr. Elbers. (5/12/04 Tr. at 160-61.) She told Detective Walker that she was at the residence for no longer than 10 minutes. (5/12/04 Tr. at 161.)

3

Samuel Vyse and Ronald Haske, two witnesses who were working on the roof of a house across the street from the Elbers, testified at Petitioner's trial that they saw a maroon pickup truck arrive at the Elbers' residence around 2:00 p.m. on June 3, 2003. (5/12/04 Tr. at 128-29, 139.) Mr. Vyse saw a female exit the truck and enter the Elbers' garage. (5/12/04 Tr. at 130.) Mr. Vyse and Mr. Haske testified that the pickup truck stayed in the driveway for 45 minutes to an hour before leaving. (5/12/04 Tr. at 130, 141.)

Frederick Keyes, the Elbers' neighbor, testified at the trial that he saw a black car pull into the Elbers' driveway sometime in the afternoon on June 3, 2003, and that it stayed for no more than 10 to 15 minutes. Mr. Keyes did not see anyone leave the car. (5/13/04 Tr. at 11, 14.) He did not see any other unusual activity at the Elbers' house that day. (5/13/04 Tr. at 11.)

At the close of trial on May 13, 2004, the jury found Petitioner guilty of the charged home invasion, larceny, and firearm offenses. On July 12, 2004, the trial court sentenced Petitioner to the terms of imprisonment set forth previously.

Petitioner thereafter filed an appeal of right with the Michigan Court of Appeals raising the same insufficiency of the evidence claim contained in the present petition and an additional erroneous sentencing claim, which she does not raise herein. The Michigan Court of Appeals denied relief on her claims and affirmed her convictions. *People v. Melton*, 269 Mich. App. 542, 711 N.W.2d 430 (2006). Petitioner sought leave to appeal in the Michigan Supreme Court, but the Court denied leave. *People v. Melton*, 477 Mich

1043, 728 N.W.2d 227 (2007).

Petitioner then filed her federal habeas petition asserting that the prosecution presented insufficient evidence to support her convictions. Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

**III.     Standard of Review**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if she can show that the state court's adjudication of her claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409, 120 S. Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

## IV. Analysis

Petitioner asserts that she is entitled to habeas relief because the prosecution presented insufficient evidence to support her convictions. Specifically, she contends there was no physical evidence (such as fingerprints) connecting her to the theft, there was no connection established between her and the stolen goods, and there was no explanation about the other car at the Elbers' house on the day when the goods were taken.

"An habeas court reviews a claim that the evidence at trial was insufficient for a conviction by asking 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). This

6

standard applies whether the evidence of guilt was direct or circumstantial. *Scott v. Elo*, 202 F.3d 598, 602 (6th Cir. 2002). "'A defendant claiming insufficiency of the evidence bears a very heavy burden . . . Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'" *United States v. Stines*, 313 F.3d 912, 919 (6th Cir. 2002) (quoting *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999)). When applying this standard, a habeas court "does not reweigh the evidence or redetermine the credibility of the witness." *Matthews v. Abramaitys*, 319 F.3d 780, 788 (6th Cir. 2003). Therefore, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 789.

Petitioner further asserts that the Michigan Court of Appeals' factual determinations are not supported by the record. In finding that the prosecution presented sufficient evidence to support Petitioner's conviction, the Michigan Court of Appeals stated:

> It is undisputed that someone entered the Elbers' home without permission on June 3, 2003, and stole six handguns and various other items of value. Defendant challenges the jury's determination that she was the individual who entered the home and took these items. Defendant admitted that she was at the Elbers' home on the afternoon of the robbery. Although defendant testified that she only entered the garage to leave a marine battery and a note for Mr. Elbers, neither of these items were ever located. Furthermore, Mr. Vyse and Mr. Haske testified that defendant was *inside the home* for an extended period of time. It is the sole province of the jury to judge the credibility of the opposing witnesses. The jury chose to discredit defendant's testimony and we may not interfere with that judgment. Accordingly, we must find that the prosecution presented sufficient evidence to support defendant's convictions and that the trial court properly denied her motion for a new trial.

*Melton*, 269 Mich. App. at 546, 711 N.W.2d at 433 (emphasis added).

Contrary to the state court's opinion, Mr. Vyse and Mr. Haske did not testify specifically that Petitioner was inside the Elbers' home for an extended period of time. Instead, these witnesses testified that a maroon truck arrived at the house, and Mr. Vyse testified that he saw a female enter the attached garage. The jury, however, reasonably could have concluded that after entering the garage Petitioner entered the house through the unlocked door between the house and the garage.[2]

Based on this evidence alone, there was sufficient evidence presented at Petitioner's trial for the jury to conclude that she was the individual who committed the theft at the Elbers' residence on June 3, 2003. Petitioner's claim essentially challenges the jury's credibility determinations and the inferences the jury drew from the evidence presented at trial. As indicated earlier, it is the job of the trier of fact, not a federal habeas court, to resolve evidentiary conflicts, and "to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. 2789. This Court must presume that the trier of fact resolved those conflicts in favor of the prosecution. *See Id.* at 326,

---

[2] Although not raised by Petitioner, this Court finds that the Michigan Court of Appeals also was incorrect in it findings concerning the previous condition of the safe's lock, the position of the blinds and curtains when the Elbers returned, and the testimony of Petitioner at trial. The Michigan Court of Appeals wrongly stated that Petitioner testified at the trial; however, the statements the court attributed to Petitioner were in fact derived from testimony by Detective Walker concerning his interview with Petitioner. While these misstatements may have influenced the Michigan Court of Appeals' analysis, in this Court's independent analysis, these factual errors do not impact whether there was sufficient evidence for the jury to conclude that Petitioner entered the house and perpetrated the theft.

8

99 S. Ct. at 2793. Therefore, the Court concludes that the Michigan Court of Appeals' decision is neither contrary to *Jackson* nor an unreasonable application of federal law to the facts presented.

## IV.    Conclusion

In summary, this Court concludes that Petitioner is not entitled to federal habeas relief based on her insufficiency of the evidence claim and her petition is denied. The Court, however, concludes that Petitioner is entitled to a certificate of appealability pursuant to 28 U.S.C. § 2253.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. R. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 485, 120 S. Ct. 1595, 1604 (2000). "A petitioner satisfies this standard by demonstrating … that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claim. *Id.* at 336-37.

While the Court believes that Petitioner is not entitled to a writ of habeas corpus

9

for the reasons previously set forth, the Court believes that the issue may be "debatable among jurists of reason." For this reason, the Court does not believe that Petitioner should be denied the opportunity to seek appellate review of her insufficiency of the evidence claim. Accordingly, the Court holds that the Petitioner is entitled to a certificate of appealability with respect to that claim.

Accordingly,

**IT IS ORDERED**, that the petition for a writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability shall issue with respect to Petitioner's sufficiency of the evidence claim.

DATE: July 20, 2010

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:
F. Randall Karfonta, Esq.
Brian O. Neill, Esq.